Thank you. Good morning, Your Honor. May it please the court. My name is Tara Hovland. I am here on behalf of the appellant, Pablo Mora. I will, yes, you, um, you can manage your own time, but could you take, uh, just a few minutes and well, seconds, uh, and just very quickly tell the audience what the case is about. I think it helps them to serve as students. Thank you. This was a case where Mr. Mora went to a party, a fight ensued. He pulled out a gun and shot somebody three times. He was charged with willful premeditated deliberate murder. The jury found that he was guilty of murder, but specifically found he was not guilty of willful premeditated and deliberated. The issue in this case was there was a lesser included offense of voluntary manslaughter, and while the issue is whether the jury was misled regarding the instruction and whether the prosecutor's misstatements of the law regarding the instruction reasonably likely affected at least one juror's decision in the case. Mr. Mora was convicted after a jury trial and he's currently incarcerated. Yes. And he's serving a sentence of 30 to life. Thank you. All right. What would the difference be if he had been convicted of manslaughter in terms of his sentence? His attempted murder conviction was only five years of the sentence because he used a gun and that was 25 years of the sentence. So it won't affect his sentence substantially. However, it's very important what happened in this case. As a presidential matter or actually for him? For him. And why? And his family. If his sentence won't matter, it won't be changed, why does it matter? Because this is a unique case in that he went to this party, he got punched, he got knocked out, he woke up, he started shooting. He was charged with premeditated murder and he said from the very beginning, I barely even remember it, I don't know what happened. But obviously this did happen and he didn't intend to kill. But the way this case came out, the jury found that he intended to kill. And to him, it's important that he didn't. So your opposing counsel made the argument that these defenses are inconsistent. That saying I don't remember is very different from saying they provoked me by punching first and I was in a heat of passion and then had to shot because I was in the heat of passion. How did, I mean, what you just said gets back, it sort of supports what they said, that these defenses don't make sense together. How do you respond to that? The malice requirement of murder has everything to do with intent to kill. And there are two ways to nullify the intent to kill. One is straight up and the other is through voluntary manslaughter, where he committed an act in the heat of passion, where he did it out of reaction versus judgment or deliberation. So his sole defense was his mental state at the time, that regardless of what happened, he didn't have the intent to kill, whether it was because of heat of passion or because he just didn't. But someone with heat of passion has the intent to kill. It's just partially excused because of heat of passion. It's different from not having any intent. In other words, intends to act. And as I read the record, which is frustrating to do, I mean, it's just, it's just hard to get your arms around what he really was saying, but, but he said he shot this person three times. So there's no question that he intended that action, which I think is what Judge Friedland's getting at, right? So it's just a question of whether he did this in a state where he was so, um, it could be any emotion, but in this case we'll say so enraged that he wasn't, he wasn't acting pursuant to his judgment. He wasn't exercising judgment. I think that has to be his defense here. Is that right? Yes. And I think there is some question as to whether he intended to shoot because of this concussive state he was in when he awoke from his being knocked out. Okay. He, but he, but he, no question. He shot three times and that the victim was laying on the ground at the time. And doesn't the jury verdict show us that the jury thought he intended to shoot? I mean that they couldn't have convicted of either of these things if they didn't think he intended to shoot. The only question was whether they properly understood that they could have convicted of manslaughter if he were in the heat of passion. Right. As opposed to premeditated murder. And in addition to heat of passion, that heat of passion has to come as a result of reasonable provocation, right? Right. So I guess if you argue the law here, the facts here seem to suggest that, you know, what's the reasonable provocation? Victims on the ground, shoots him three times. The provocation was the earlier punch? The provocation was being punched so hard he got knocked out. And that puts you in a heat of passion? Well, that was the second element of the defense. The defense is he got knocked out and he woke up and he started shooting. And the other aspect of that defense is, and he even said this to the police, he said, I don't know what happened. I woke up, maybe I was angry that I just got knocked out and that's what happened, but it happened so fast. So could I stop you there? Because I've just struggled with this part.  But as I read what he had to say in his police interview, it sounds like he remembers a lot. He remembers that his version of events is that there was some kind of a confrontation going on before he got there and that he was not the person who instigated the confrontation. I mean, I think that has to be his argument. And then he clearly remembers shooting this person three times when the person was on the floor. So it doesn't seem to me that he's having a problem remembering, but that can't explain or hasn't explained that his defense is he doesn't know sort of why he did that because he was in this altered mental state. Is that a fair, I'm not trying to put words in your mouth. I'm honestly trying to figure out what this argument is. Right. And the defense expert explained it very well. The defense expert said that he watched the video, the DVD of the defense statements, and that it was consistent with him being briefly knocked out, having mild traumatic head injury, and subsequently being in this concussed state. And he explained that it triggers this primitive fight or flight response. And even though he can shoot and he would remember the gunshots because those are a traumatic event, he still may not have known what was going on during this time. And they analogize it to a quarterback on a football field who gets hit in the head and he can still throw the winning passes, but he's doing it on automatic. So he's on autopilot, which is different than not remembering the event. Right. He remembers pretty darn well, it seems to me, unless there's some part of it where you want to point and by all means, please correct me if I'm wrong. I can't see anything he doesn't remember. Right. And that's what I'm saying is the defense expert explains the parts that he remembers and why he remembers them, even though the, of the concussed state. Counselor, my question is different. Is there, and I don't mean to belabor the point, but is there anything, any part of this sequence of events that your client maintains he doesn't remember? He remembers shooting. He just doesn't remember why. And that's what he was telling the police. All right. Remember whether he was conscious of how angry he was. He doesn't remember whether he was angry or dazed or what he just heard. And the jury heard this evidence in addition to the evidence from the victim that seems to suggest, and correct me if I'm wrong, arguably that this was shooting was over some territorial issue or a gang issue. The, the evidence on that was that somebody said, where are you from? The other guy answered, the other guy said, fuck that. And the other guy yelled another gang slogan, but everything happened so fast. They didn't even allege a gang allegation in this case. But the victim said more than that. If the, if the jury, what the jury heard from the victim is that the short guy, and that's your client of the two, made an insulting remark about the opposite gang and also pushed him, pushed the victim first, then there was a punch thrown. I think, I think no one says that your client threw the first punch, but for a question that you might want to respond to, if you could, is I think there was evidence that your client may have been considered the person who provoked the incident by making the insulting remark and pushing him. What about that? There was, and the court distinctly denied the prosecutor's pinpoint instruction on the defendant being the first provoker or the first initiator. They went rounds on this in the trial court about this pinpoint instruction, trying to tell the jury that that mattered. And the court said, no, I'm not going to give it. What do we make of that? The jury heard the evidence. So what do we make of this point that the instruction wasn't given? Well, there's a big difference between the shove and then the provocation of being punched so hard you're knocked out. And that's what this case was about, was the provocation, the sufficiency of the provocation for heat of passion. And it wasn't about the initial aggression because the victim's story changed a million times. Even if you read the statement of facts, he didn't know who started what. He identified other people as being the people that shot him. He said he was stabbed. I mean, his story changes so often that you can't even rely on it. And so this case all came down about whether there was this sufficiency of provocation to negate malice. So your opposing counsel argued in the briefing that, as I understand the argument, this is all harmless anyway because he wasn't entitled to a provocation instruction or a manslaughter instruction at all because he started the fight. And under California law, if he started the fight, he's guilty regardless of whether he eventually was in a heat of passion. You didn't respond to that in your reply brief at all, as I saw it. But is it your response now that that argument is wrong because it's actually a fact dispute? Is that what I'm understanding you to be saying? That argument is wrong because the court found that he was entitled to this instruction and the court instructed the jury. But the court could be wrong about that, right? I mean, just because the court found it, was the court correct to find that? What is your reason that this instruction should have been given? Because when you have the facts that are properly presented in a case like this, where there's a sudden quarrel, clearly a sudden quarrel, this was a fight, it raises the specter of the prosecuting, the prosecution having to prove beyond a reasonable doubt, the absence of heat of passion to negate the malice element of murder. And that's when these instructions are required. But under California law, as I understand the argument, under California law, if someone instigates the fight, then they don't get the manslaughter instruction. And I think here there was so much evidence that nobody knew who really instigated the fight because of the victim's testimony was incredible. So you're saying there was a fact dispute about that or it wasn't clear? Right. And it was enough to go to the jury. May I have a minute or two for rebuttal? Thank you. Good morning. Gregory Ott for Respondent. I'd like to digress for a moment about the court's order. Did the court have any questions? OK. Thank you for the letter. That was helpful. Thank you. These defenses weren't only legally inconsistent, they were factually inconsistent. Excuse me. Mr. Mora said here that he was on autopilot. He didn't remember why. I don't see how a jury could find that he acted in the heat of passion if he doesn't even remember why. Or another way of saying it, he has no evidence, even by his own word, that he was acting under heat of passion. I haven't seen a case like that either. But why not? Why couldn't he be a guy like a football player who's got a closed head injury who functions on autopilot? Is there? I haven't seen one, but. Well, theoretically, I suppose that that could happen. Did the expert say it could happen? Did the expert rule it out? He talked about he gave an example of a quarterback winning the game and not remembering it. But my point is, even if you accept that. He has no evidence that he acted under heat of passion because he doesn't remember. So in other words, you're saying that you've got the, forgive me, the victim's testimony and then sort of the absence of testimony on the other side. Is that what you mean? And as opposed to, you know, a void, I can't remember, I don't know if I felt heat of passion. Is that your point? Well, that wasn't that wasn't the argument at trial. I mean, that's just on this on this point. What's your argument today? Well, my argument today in response to your question is that that if he can't remember that, that that if he can't remember, then he has no evidence that he acted. And so it is this void argument that as opposed to competing evidence, which was judge Friedland's point, you're now saying that there isn't a competing inference because he doesn't have affirmative evidence about what his emotional state was. That's correct. If you believe him. Right. But there was competing evidence there, for example, I think one of your honors said that there wasn't any evidence that that Mr. Mora threw the first punch. The victim said he threw the first punch. So, well, they said that the tall guy threw the first punch, right? Not that Mr. Mora threw the first. There was a pushing and then there was a punch punch. If that's I may be misremembering and I apologize. I didn't remember if it was that I didn't realize it was the taller one. That's OK. There's three of us and there's only one of you. But but but be that as it may, please, please continue. Well, I'd like to go back. So we had two things where there might be fact disputes. One is who started the fight and the other is what was his mental state? I'd like to go back to the mental state for a second. So I thought there was expert testimony that someone who's been knocked out either might basically not be that conscious at all or could be angry, could sort of wake up in an anger, angered, heat of passion like state. It wasn't that one of the things that the experts said. And so would that fill the void that might come from Mora's lack of recollection? I don't remember the specific testimony, but I don't believe that the theoretical possibility is it could count as affirmative evidence. He certainly wasn't suggesting that that was the case here. He was offering his testimony as what are the what are the possibilities of a given brain injury? So are we just given a choice between who's more credible here in terms of the the evidence concerning? Well, was who started it? What was the intent of the defendant here? Are we trying to and I know we we don't want to do that, but are we being asked perhaps to reweigh the evidence and decide credibility issues? No, Your Honor, this this putting the evidence aside, this is about the instruction that was given. We do talk about the evidence in the context, of course, of of prejudice and to a lesser extent on the question of whether the jury misapplied this. And on the on the issue of error, we certainly don't believe the jury misapplied this. This this instruction on its face is not incorrect. It does not say that the jury may. In fact, so I read the court of appeal, the state court of appeal as essentially saying that this instruction was ambiguous. But then going on to say, when you look at everything as a whole, there wasn't a problem. Do you read it differently? It sounds like you're saying, OK, how do you read it differently? Why did the court say we look at an ambiguous and when we have an ambiguous instruction, we do X if it didn't think the instruction was ambiguous? Well, because it it all it said in conclusion was this new language, this new version of the instruction might be better. But this wasn't incorrect. And the district court thought that the court of appeals had been ambiguous, had found the instruction ambiguous. And the court of appeals said for ambiguous instructions, the test is whether and that's how they introduced the whole discussion. So it seems like they thought this was an ambiguous instruction. So for those of us who've read that about 12 times to try to make sense of why would they say that? Do you have a best guess? Well, they laid out the test of whether it was. And my my position is they laid out the test and they found it wasn't. No, they laid out the test for what you do when there's an ambiguous instruction to figure out whether it was harmful, which presumes or I'd have to pull it up. But they presumed it was ambiguous and then talked about what you do when you're faced with an ambiguous instruction. Well, I don't know if they presumed or not. That's the problem. They didn't say whether they think this thing was ambiguous. Right. But then they then they said, here's what we do if it is ambiguous. And I think that's why I think that's why the district court decided that she she thought the court of appeals had decided that instruction was ambiguous. But the court of appeals doesn't really say that. That's my position. I recognize the district court thought it was I disagree with her, and I do disagree that they found it was ambiguous. But but let's just say let's say they did. That's not constitutional error. That's just a step in. Let's see if it is. And the next step or the question, the real question is simply ambiguous and ambiguous or not. Is there a reasonable probability that the jury applied this in a way that probably didn't have his constitutional rights? We'll give for the for the benefit of our folks who are visiting. Then there was there was an instruction and then the instruction had been changed. And the and the court of appeals forgive me, the state court of appeals said the new instructions better. Right. And so then the question and then follows up with this notion about here's what we do if there's an ambiguity. So does that help put in perspective why there was a discussion of the test for an ambiguous? What would you do with an ambiguous instruction? I'm not I'm not sure I understand. In other words, the fact that the instruction had been rewritten, had been the pattern had been rewritten and changed, that the court certainly commented on that and recognized said that the new one may be better. Is that what it's speaking to and talking and talking about, you know, even if there was an ambiguity in the old one, because something prompted changing the the pattern. I think it is better. And that's what the court of appeals said. I just in terms of being a legal consequence, I don't believe they found it was ambiguous. OK, so I didn't have the whole sentence before, but the sentence is for ambiguous instructions. The test is whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction. Why would they have said that if they didn't think it was ambiguous? And then they go on to talk about whether it was misapplied or mis they try to apply that sort of essentially harmlessness test, but the starts with were ambiguous instructions could be. Your Honor, I don't know. It could be a question of just defining what is ambiguous and ambiguous has no federal constitutional legal consequence. Counsel, couldn't it be reconciled to some extent, arguably reconciled that ambiguous in one part, but taken as a whole, not misleading? That's correct, Your Honor. And that is that has been our argument that taken as the instruction, that instruction as a whole, as well as the other instructions, as well as. And this goes into prejudice. The inconsistent defense is not just inconsistent, but put that aside. This simply wasn't relied upon. Now, counsel suggested that this was a sort of a dual defense. It simply wasn't. Here's here's a defense counsel's argument is theoretically you could find, excuse me. Theoretically, it is our position that he didn't have the intent to kill. Theoretically, one could come to this conclusion. He did have the intent to kill. But this occurred upon the sudden quarrel of heat of passion. We argue there was no intent to kill. And that's because the evidence supported his defense. It didn't support heat of passion. There simply wasn't. You at best, you had one punch thrown. Did the state object to giving the manslaughter instruction? I don't recall. I mean, because what you're saying now is there was no evidence to support a manslaughter instruction. There was no they weren't arguing heat of passion. There was no reason to give heat of passion as an instruction. If that was the case, why didn't the state try to say it shouldn't be given? I don't know. Is are you referring to my first argument about cog? No, I mean, you're just saying that they didn't use heat of passion as a defense. So if that's true, why was a manslaughter instruction given at this trial? Or at least objected to. Well, I don't, I, first of all, I don't know that they knew what defense was going to be relied upon. Well, weren't the instructions given at the end of trial? I mean, after the evidence was presented, couldn't the prosecution have said, now that we see what the evidence has been, let's talk about whether this instruction should be given? Yes, I've never seen that occur, but I, that is theoretically possible, yes. My, my argument, I, I'm not sure if I'm talking about, I see my time's run out, but you're not referring to my cognizability argument about there being no right. Well, I can talk about that too. That's not what I was just talking about. I just wanted to make sure I wasn't. No. But I, I see that I'm out of time. I'm happy to answer any further questions, but. Well, on the cognizability issue, which is not what we were, what I thought we were just talking about, isn't it a federally cognizable claim if the ambiguous instruction removed the prosecution's burden of proving an element? No. No? No, because, well, two, two reasons. One is, you've simply relabeled a, a lesser included instruction, and the, the. But hasn't, hasn't California, haven't California courts said that it's actually an element of murder in California for the prosecution to show lack of heat of passion, essentially? In other words, if the prosecution has the burden, surely you'll agree with that. The, the prosecution has the burden of disproving it if it's, if it's raised. But it's not one of the elements of the instruction on murder. In other words, it's not given in every case. But when it is raised, it essentially becomes an element of murder that the prosecution has to prove. They have to prove the absence of that. Yes. Yes. And so if that's the case, then if somehow that gets messed up so that the jury doesn't believe it's part of the prosecution's burden, then doesn't that raise a federal issue? Because as a due process matter, the prosecution has to prove beyond a reasonable doubt every element. Well, again, I think it's semantically relabeling a right to a, a lesser included. He, he didn't, the, the, the error, the substantive error that's being alleged is I was deprived of the right for the ju, of the jury to, to find me guilty of a lesser included offense. He never had that right. Well, there's a difference between not instructing on a lesser included and giving an instruction that's incorrect. That's right, your honor. And some, but sometimes a lesser included instruction can implicate, it can monkey wrench other instructions. This isn't the case here. This, this instruction did not implicate any other instructions, notwithstanding the, except in the, the, the Judge Friedland is, is arguing. I, I, an analogy I can think of is you can you have no right to counsel on federal habeas, but if one's appointed and they commit error, you still can't challenge the claim. If the claim, the, the, the, the right doesn't exist, so an error in the right doesn't deprive you of anything, I suppose, is the way to put it, but. Thank you, counsel. Thank you. Very quickly, your honor, I just have, sorry, I'll be very quick. I just have some cites to some questions that you had. The first one had to do with the expert witness and whether he found that the actions could be consistent with rage or just with waking up after a fight. That's at excerpts of record four on page nine. It says, but Dr. Light conceded that the defendant's actions after being knocked out might be consistent with rage. He agreed they could also be consistent with waking up to a fight and the next one is, did, is excerpts of Reven's, I'm sorry, excerpts of record seven at 998, it has to do with the defendant's closing argument and whether he argued this theory or not. The defense counsel said specifically, this is where we're at with intent. Attempted murder requires specific intent to kill. If you want to find premeditated, you have to go farther. Lesser included attempted voluntary requires a specific intent to kill, but that's under sudden fight or heat of passion. An assault with a firearm doesn't require specific intent to kill at all. And then he goes into reading the provocation requirement for involuntary manslaughter. So he was obviously arguing that theory to the jury. Now this case is not just about the ambiguity of the instruction, which I agree wholeheartedly with the court that both the district court and the court of appeal found it ambiguous and that's why they both analyzed it under the test for ambiguous instructions, but it's also about the prosecution's misstatements of law. And there's one more site I want to give you before I get backtracked. You have that site where the court of appeal discussed the ambiguous test. That was excerpts of record four at 14. So it was about these misstatements of law that the prosecution made in addition to the, the instruction being ambiguous. And it was all about this language about the sufficiency of provocation being how a reasonable, how a person would react in the same situation. The prosecution ran with that and said, is it reasonable that being punched, you would put out, pull out a gun and shoot somebody? Is it reasonable that you get spit on when you kill somebody? And so they're basically telling the jury that if one of you finds that it's not reasonable, you're going to pull out a gun and shoot somebody for punching you, then forget about voluntary manslaughter. It's not even an issue. And that's where the element of malice wasn't proven beyond a reasonable doubt and where the defense got really messed up from being able to have adequate instructions on their theory of defense. There was a response to that. The prosecutor made several misstatements actually in the first part of his closing argument and then on rebuttal, a little more on rebuttal. The, the defense counsel did some repair work in, in closing. But I, I'm just wanting to know whether, apart from that, are there other places in the record where there was an objection or any correction by the court as those comments were made by the prosecutor? There wasn't. And that's what, that's what disturbs me about this case. Did you say there wasn't or was? Sorry. There wasn't. The defense attorney didn't object. And that's why this got framed the way it did regard, you know, instead of prosecutor on misconduct. So that might be a procedural default of some sort of this combination of the prosecutor's argument with the instruction, but I don't see the state arguing procedural default. No, they're not. And the defense attorney, this was what bothered me about this is the defense attorney ostensibly got up and tried to correct what the prosecutor was saying by rereading the first half of the instruction, but didn't explain to the court, I mean, to the jurors, what exactly the prosecutor got wrong. He just said, look, the prosecutor's ad-libbing and he's getting some stuff wrong, so I'm going to redo the first half, but he doesn't explain what was wrong about it. And moreover, like in other cases where the court clarifies it to the jury and says, wait a minute, this is a misstatement. This is what it really is. That didn't happen here. It was just another attorney saying that it was different. Does that have to happen simultaneously with the prosecutor's misstatements or can it be cured by the actual written instructions? It says, disregard what counsel says. You follow the law that I tell you it is. Right. And that's the other thing is, is there's, there's been this representation that the standard instruction 200 on follow the law, not the arguments is a curative instruction. And it's not. It's the standard instruction that you get at the very beginning of your packet. And I don't think the jury in any way, shape or form would think that that affected these arguments that were happening here. First of appeal rely on an awful lot. Uh, as you know, um, I don't mean to belabor the point, but, but was, was there any requests for a corrective instruction? No. Fair enough. Anything further? Thank you so much. Uh, both of you for your arguments today. We'll, we'll stand and reset. Thank you.
judges: Lemelle, Christen, Friedland